## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re:                                    :  Chapter 11
                                          :
EYP Group Holdings, Inc., *et al.*,[1]    :  Case No. 22-10367 (MFW)
                                          :  (Jointly Administered)
            Debtors.                      :
                                          :  **Re: I.D. Nos. 12, 15, 16, 81, 153, 158,**
------------------------------------------------------------ x  **159, 160, 209, 230, 269, 270, 271, & 273**

### ORDER (A) APPROVING AND AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS TO PAGE SOUTHERLAND PAGE, INC. FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (C) GRANTING RELATED RELIEF

This matter coming before the Court on the *Motion of Debtors for Entry of (I) an Order (A) Establishing Bidding Procedures, (B) Approving Bid Protections, (C) Establishing Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts, (D) Approving the Form and Manner of Notice, (E) Scheduling a Hearing to Consider A Proposed Sale and (F) Granting Related Relief; and (II) an Order (A) Approving the Sale, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale, and (C) Granting Related Relief* (the "Motion"),[2] filed by the above-captioned debtors and debtors in possession (the "Debtors") for the entry of an order (this "Order"), pursuant to sections 105(a), 363 and 365 of title 11 of the

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: EYP Group Holdings, Inc. (1041); EYP Holdings, Inc. (0792); EYP, Inc. (0504); EYP Architecture & Engineering, P.C. (7234); EYP Architecture & Engineering of CT, Inc. (1181); EYP Architecture & Engineering of NJ, Inc. (7534); EYPAE, Inc. (7191); WHR Architecture, P.C. (5236); and WHR Design, P.C. (1535). The corporate headquarters and the mailing address for the Debtors is 201 Fuller Road, 5th Floor, Albany, NY 12203, <u>Attn</u>: Kefalari L. Mason.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion and the Stalking Horse APA, as applicable.

United States Code (the "Bankruptcy Code"), Rules 2002, 6004, and 6006 of the Federal Rules of

Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"), and rule 6004-1

of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court

for the District of Delaware (the "Local Rules"), (a) authorizing the sale of substantially all of the

Debtors' assets (as identified in the Asset Purchase Agreement with Page Southerland Page, Inc.

or its designee, dated June 20, 2022 (together with all documents ancillary thereto, the "Successful

Bidder APA"), the "Acquired Assets") free and clear of all liens, claims and encumbrances to Page

Southerland Page, Inc. or its designee(s) (the "Buyer") pursuant to the terms and conditions of the

Successful Bidder APA, a copy of which is attached hereto as **Exhibit A**; (b) authorizing and

approving the entry into, performance under, and the terms and conditions of the Successful Bidder

APA (including all actions taken or required to be taken in connection with the implementation

and consummation of the Successful Bidder APA); (c) authorizing and approving the assumption

and assignment of the Assumed Contracts and Assumed Leases in connection with the Sale; and

(d) granting certain related relief, all as more fully described in the Motion and Successful Bidder

APA; and the Court having entered an order on May 11, 2022 [D.I. 81] (the "Bidding Procedures

Order") (x) approving procedures (the "Bidding Procedures") for (i) submitting bids for the

purchase of the Acquired Assets and, if necessary, (ii) conducting an auction for the Acquired

Assets (the "Auction"); (y) approving the Bid Protections for the Buyer in the event Buyer is not

the Successful Bidder (as defined in the Bidding Procedures); and (z) approving procedures for

the assumption and assignment of executory contracts and unexpired leases in connection with the

Sale; and the Court having reviewed the Motion and the Court having found that (i) this Court has

jurisdiction over the Debtors, their estates, property of their estates and to consider the Motion and

the relief requested therein under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of*

*Reference from the United States District Court for the District of Delaware*, dated February 29, 2012 (Sleet, C.J.); (ii) this Court may enter a final order consistent with Article III of the United States Constitution; (iii) venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) this is a core proceeding pursuant to 28 U.S.C. § 157(b); and (v) the Debtors' notice of the Motion and opportunity for a hearing were adequate and appropriate under the circumstances and no other or further notice need be provided; and after due deliberation; and the Court having conducted a hearing on the Motion on June 22, 2022 (the "<u>Sale Hearing</u>") and having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and good and sufficient cause having been shown;

### IT IS FOUND AND DETERMINED THAT:

A.      The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  The findings made herein are based on the evidence and proffers presented at or in connection with the Sale Hearing.

B.      To the extent any of the following findings of fact constitute conclusions of law, they are hereby adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are hereby adopted as such.  Any findings of fact or conclusions of law stated by the Court on the record at the Sale Hearing are hereby incorporated, to the extent they are not inconsistent herewith.

### Jurisdiction, Final Order and Statutory Predicates

C.      The Court has jurisdiction over this matter, over the property of the Debtors and their bankruptcy estates, including the Acquired Assets, pursuant to 28 U.S.C. §§ 157(a) and 1334. The Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157(b)(1)

and 1334(a).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue of the Chapter 11 Cases and the Motion is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that cause exists to waive all applicable stays with respect to the effectiveness of this Order, which shall be effective immediately upon entry on the docket.

E.      The statutory predicates for the relief requested in the Motion are sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

## Compliance with Bidding Procedures Order

F.      As demonstrated by (i) the testimony and other evidence proffered, including without limitation the *Declaration of Kefalari L. Mason in Support of First Day Motions* [D.I. 15], the *Declaration of Scott Webb in Support of the Debtors' Bidding Procedures and Sale Motion and Financing Motion* [D.I. 16], the *Supplemental Declaration of Scott Webb* [D.I. 230], the *Supplemental Declaration of Scott Webb in Support of the Motion of the Debtors for Entry of (I) an Order (A) Establishing Bidding Procedures, (B) Approving Bid Protections, (C) Establishing Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts, (D) Approving Form and Manner of Notice,(E) Granting Related Relief; and (II) an Order (A) Approving the Sale, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale and (C) Granting Related Relief* [D.I. 269], the *Supplemental Declaration of Robert J. Gross* [D.I.

- 4 -

270] and the *Declaration of Thomas McCarthy in Support of Sale of Debtors' Assets to Page Southerland, Inc.* [D.I. 273] and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors and their professionals have fairly marketed the Acquired Assets and conducted the sale process in compliance with the Bidding Procedures and the Bidding Procedures Order. All interested persons and entities have been afforded a full, fair and reasonable opportunity to (i) conduct due diligence investigations, (ii) submit bids to purchase the Acquired Assets, and (iii) object or be heard with respect to the Motion and the relief granted by this Order. The Bidding Procedures were non-collusive, formulated and implemented in good faith, were substantively and procedurally fair to all parties, and obtained the highest or otherwise best value for the Acquired Assets for the Debtors, their estates, and creditors under the circumstances.

G.    The Buyer is the Successful Bidder (as defined in the Bidding Procedures) for the Acquired Assets in accordance with the Bidding Procedures Order, and the consideration provided by the Buyer under the Successful Bidder APA constitutes the highest or otherwise best offer and provides fair and reasonable consideration to the Debtors and their estates for the sale of the Acquired Assets and the assumption of all Assumed Contracts and Assumed Leases.

## Notice of the Sale, Auction and the Cure Costs

H.    Actual written notice of the Sale Hearing, the Auction, the Motion, the Sale, the assumption and assignment of the Assumed Contracts and Assumed Leases, and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all known interested persons and entities, including, but not limited to, the following parties (the "Notice Parties"): (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to the Prepetition Secured Party under the Prepetition Loan Documents and the DIP Lender; (iv) counsel to Ault Alliance, Inc. as the Stalking

- 5 -

Horse Buyer; (v) the Internal Revenue Service;  (vi) the United States Attorney's Office for the District of Delaware; (vii) all parties that have requested notice pursuant to Bankruptcy Rule 2002; (viii) all persons or entities known to the Debtors that have or have asserted a lien on, or security interest in, all or any portion of the Acquired Assets; (ix) all non-Debtor parties to each Assumed Contract and Assumed Lease (each a "<u>Contract Counterparty</u>" and collectively, the "<u>Contract Counterparties</u>"); (x) all potential bidders previously identified or otherwise known to the Debtors; and (xi) all creditors of the Debtors.

I.      As evidenced by the certificates of service filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, Auction, Sale Hearing, and the Sale of the Acquired Assets, including the assumption and assignment of the Assumed Contracts and Assumed Leases, has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, and all applicable Local Rules.  The notices described above were good, sufficient, and appropriate under the circumstances. No other or further notice of the Motion, Auction, Sale Hearing, Sale, or assumption, assignment and sale of the Assumed Contracts and Assumed Leases is required, and due process has been satisfied.

J.      In accordance with the provisions of the Bidding Procedures Order, as evidenced by the certificates of service on the docket, the Debtors filed and served *Notice to Counterparties of Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and Cure Costs* [D.I. 88] (the "<u>Cure Notice</u>")[3] upon the Buyer and the Contract Counterparties: (i) that the Debtors seek to assume and assign the Assumed Contracts and the Assumed Leases on the Closing Date; (ii) of the relevant Cure Amount; and (iii) the deadline by which any Contract Counterparty must object to the assignment and assumption of the Assumed Contracts and the Assumed Leases.

---

[3]      The terms "Cure Amount(s)" and "Cure Cost(s)" are used in this Order interchangeably.

Pursuant to Fed. R. Bankr. P. 6006(c), the service of such Cure Notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of establishing a cure amount for the Assumed Contracts and Assumed Leases or regarding the assignment and assumption of the Assumed Contracts and Assumed Leases.  Each Contract Counterparty has had a full and fair opportunity to object to the Cure Costs set forth in the Cure Notice and to the assumption and assignment of the Assumed Contracts and Assumed Leases.

K.       On June 17, 2022, the Debtors filed the *Notice of Conclusion of Auction and Successful Bidder and Back-Up Bidder* [D.I. 267] with the Court, identifying the Buyer as the Successful Bidder in accordance with the Bidding Procedures Order, and served such notice in accordance with the Bidding Procedures Order.

## **Highest or Best Offer**

L.       The Debtors solicited offers in accordance with the provisions of the Bidding Procedures Order, as modified by the *Order Granting Motion of the Official Committee of Unsecured Creditors of EYP Group Holdings, Inc., et al. to Extend Certain Deadlines Set Pursuant to the Order: (I) Establishing Bidding Procedures; (II) Approving Bid Protections; (III) Establishing Procedure Relating to Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; (IV) Approving Form and Manner of Notice; (V) Scheduling a Hearing to Consider any Proposed Sale; and (VI) Granting Certain Related Relief* [Dkt. 235], the *Order on Motion of the Official Committee of Unsecured Creditors of EYP Group Holdings, et al. to Compel the Debtors to Qualify the Bid of Page Southerland Page, Inc. Pursuant to the Order: (I) Establishing Bidding Procedures; (II) Approving Bid Protections; (III) Establishing Procedure Relating to Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure*

*Amounts; (IV) Approving Form and Manner of Notice; (V) Scheduling a Hearing to Consider any Proposed Sale; and (VI) Granting Certain Related Relief* [D.I. 245], and the *Order Extending Certain Deadlines set Pursuant to the Bidding Procedures Order* [D.I. 255], and conducted the Auction.  In accordance with the Bidding Procedures Order, all persons and entities were afforded a full, fair and reasonable opportunity to make a higher or otherwise better offer to purchase the Acquired Assets, as compared to the offer pursuant to the Stalking Horse APA.  The marketing and bidding processes implemented by the Debtors and their advisors, as set forth in the Motion, were fair, proper, and reasonably calculated to result in the best value received for the Acquired Assets.

M.    The Auction, which commenced on June 13, 2022, was continued to June 17, 2022, and its continuation was cancelled on June 17, 2022, was conducted in accordance with the Bidding Procedures Order, as modified by the *Order Granting Motion of the Official Committee of Unsecured Creditors of EYP Group Holdings, Inc., et al. to Extend Certain Deadlines Set Pursuant to the Order: (I) Establishing Bidding Procedures; (II) Approving Bid Protections; (III) Establishing Procedure Relating to Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; (IV) Approving Form and Manner of Notice; (V) Scheduling a Hearing to Consider any Proposed Sale; and (VI) Granting Certain Related Relief* [Dkt. 235], the *Order on Motion of the Official Committee of Unsecured Creditors of EYP Group Holdings, et al. to Compel the Debtors to Qualify the Bid of Page Southerland Page, Inc. Pursuant to the Order: (I) Establishing Bidding Procedures; (II) Approving Bid Protections; (III) Establishing Procedure Relating to Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; (IV) Approving Form and Manner of Notice; (V) Scheduling a Hearing to Consider any*

*Proposed Sale; and (VI) Granting Certain Related Relief* [D.I 245], and the *Order Extending Certain Deadlines set Pursuant to the Bidding Procedures Order* [D.I 255], and in a non-collusive, fair and good-faith manner, and a reasonable opportunity has been given to any qualified, interested party to make a higher and better offer for the Acquired Assets; *provided, however*, that all rights of the Stalking Horse Buyer under any applicable agreement, the Bid Procedures Order and any other Order of the Court are hereby reserved and such rights are neither modified nor waived by this Order.  No party in interest has filed an objection with respect to the conduct of the Auction or compliance by the Debtors with the Bidding Procedures Order.  At the close of the Auction, the Debtors determined, in consultation with the Consultation Parties, that the Buyer had submitted the highest and best offer for the Acquired Assets, pursuant to the terms set forth in the Successful Bidder APA.

N.    The Successful Bidder APA constitutes the highest or best offer for the Acquired Assets, is fair and reasonable, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  The Debtors' determination that the Successful Bidder APA constitutes the highest or best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.

O.    The Debtors have also determined, in a valid and sound exercise of their business judgment and in consultation with the Consultation Parties, that the next or otherwise best Qualified Bid (as defined in the Bidding Procedures) (the "Designated Back-Up Bid") for the Acquired Assets, as set forth in the Stalking Horse APA, was that of the Stalking Horse Buyer (the "Designated Back-Up Bidder") at the purchase price and on the terms set forth in the Stalking Horse APA.

P.      The DIP Liens securing the DIP Obligations under the DIP Loan Documents (and, subject to the Roll-Up, the Prepetition Liens securing the Prepetition Secured Obligations under the Prepetition Loan Documents) (as these terms are defined in the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral; (II) Granting Adequate Protection to Prepetition Secured Party; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [D.I. 149] (the "Final DIP Order")) shall attach to the proceeds from the Sale in the same order of priority and with the same validity, force and effect, and subject to the same carve-outs, as set forth in the Final DIP Order, subject to any outstanding challenge rights of the Committee.

Q.      The consideration provided by the Buyer pursuant to the Successful Bidder APA is fair and adequate and constitutes reasonably equivalent value, fair consideration, and reasonable, current market value for the Acquired Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Voidable Conveyance Act, and under any other applicable laws of the United States, any state, territory, possession, or the District of Columbia.

R.      Approval of the Motion and the Successful Bidder APA and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their creditors, their estates, and other parties in interest.

S.      The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification to enter into the Successful Bidder APA, sell the Acquired Assets, and assume and assign the Assumed Contracts and Assumed Leases under sections 363 and 365 of the Bankruptcy Code, and such actions are appropriate and reasonable exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.  Such business reasons include, but are not limited

to, the facts that (i) there is a substantial risk of deterioration of the value of the Acquired Assets if the Sale is not consummated as soon as possible; (ii) the Successful Bidder APA constitutes the highest or otherwise best offer for the Acquired Assets; (iii) no other person or entity has offered to purchase the Acquired Assets for greater economic value to the Debtors' estates than the Buyer; and (iv) the Sale presents the best opportunity to realize the value of the Debtors' assets.  In addition, the Debtors' determination that the Successful Bidder APA constitutes the highest or otherwise best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.

## Authority to Consummate Sale

T.     The Debtors have full corporate power and authority to execute and deliver the Successful Bidder APA, the Transition Services Agreement, and all other documents contemplated thereby, to perform their obligations therein, and to consummate the Sale, and the Sale has been duly and validly authorized by all necessary corporate action of the Debtors.  No further consents or approvals are required for the Debtors to consummate the transactions contemplated by the Successful Bidder APA, except as otherwise set forth in the Successful Bidder APA.

U.     The transfer of the Acquired Assets to the Buyer will be, as of the closing of the Sale (the "Closing Date"), a legal, valid, and effective transfer of such assets, and vests or will vest the Buyer with all rights, title, and interests of the Debtors to the Acquired Assets, free and clear of all obligations, interests, Claims, Liabilities, and Encumbrances, except Assumed Liabilities and Permitted Encumbrances.

## Good Faith of Buyer

V.     The Buyer is purchasing the Acquired Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full

protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (a) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets; (b) the Buyer complied with the provisions in the Bidding Procedures Order; (c) the Buyer agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (d) the Buyer in no way induced or caused the chapter 11 filing by the Debtors; (e) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed; (f) the Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (g) no common identity of directors or controlling stockholders exists between the Buyer and the Debtors; (h) the Buyer is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code; and (i) the Successful Bidder APA, a true and correct copy of which is attached hereto as **Exhibit A**, and any other agreements or instruments related thereto, were negotiated and executed at arm's length, without collusion and in good faith as confirmed on the record at the Auction.

### No Fraudulent Transfer; Not a Successor

W.    The consideration provided by the Buyer for the Acquired Assets pursuant to the Successful Bidder APA (i) is the highest or otherwise best offer for the Acquired Assets; (ii) will provide a greater recovery for the Debtors' estates and creditors than would be provided by any other practical available alternative, and (iii) constitutes reasonably equivalent value and fair consideration for the Acquired Assets.

X.    The Buyer is not a mere continuation of the Debtors or their estates, and the Buyer is not a successor to the Debtors or their estates. The Sale does not amount to a consolidation, merger, or *de facto* merger of the Buyer with or into the Debtors. Neither entry into the Successful

- 12 -

Bidder APA nor the Sale of the Acquired Assets is being undertaken to hinder, delay, or defraud the Debtors' present or any future creditors.

## Section 363(f) Is Satisfied

Y.      Except as expressly provided in the Successful Bidder APA or this Order, to the fullest extent permitted under the Bankruptcy Code, the Acquired Assets shall be sold free and clear of all liens (including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), claims (including any "claim" as defined in section 101(5) of the Bankruptcy Code), encumbrances, interests, obligations, rights, pledges, mortgages, deeds of trust, security interests, liabilities, debt obligations, penalties, charges, judgments, guaranties, and indemnity obligations, in each case, of whatever kind, nature, or description in, against, or with respect to any of the Acquired Assets, having arisen, existed, or accrued prior to the Closing Date, whether direct or indirect, absolute or contingent, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, material or non-material, disputed or undisputed, known or unknown, matured or unmatured, liquidated or unliquidated, arising or imposed by agreement, understanding, law, equity, statute, or otherwise, including claims or liabilities arising under doctrines of successor liability, or *de facto* merger (other than the Permitted Liens and the Assumed Liabilities, collectively, the "Interests").

Z.      The Buyer would not have entered into the Successful Bidder APA and would not consummate the transactions contemplated thereby (by paying the Purchase Price and assuming the Assumed Liabilities and Permitted Liens) if the sale of the Acquired Assets to the Buyer, and the assumption, assignment and sale of the Assumed Contracts and Assumed Leases to the Buyer, were not free and clear of all Interests, or if the Buyer, its affiliates, or their respective officers,

- 13 -

directors or shareholders, or the Acquired Assets, would, or in the future could be liable for any Interests, or could or would be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Interest.

AA.   Not selling the Acquired Assets free and clear of any and all Interests would adversely impact the Debtors' estates, and the Sale of the Acquired Assets other than as free and clear of all Interests would be of substantially less value to the Debtors' estates.

BB.   The Debtors may sell the Acquired Assets free and clear of all Interests because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied; *provided, however*, that the DIP Liens securing the DIP Obligations under the DIP Loan Documents (and, subject to the Roll-Up, the Prepetition Liens securing the Prepetition Secured Obligations under the Prepetition Loan Documents) (as these terms are defined in the Final DIP Order) shall attach to the proceeds from the Sale in the same order of priority and with the same validity, force and effect, and subject to the same carve-outs, as set forth in the Final DIP Order.  Those holders of Interests against the Debtors, their estates or any of the Acquired Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.  All other holders of Interests, including those who maintained and did not withdraw objections to the Sale or the Motion, if any, fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

## **Validity of Transfer**

CC.   The consummation of the Successful Bidder APA and the Sale is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code,

and all of the applicable requirements of such sections have been complied with in respect of the Sale.

DD.     The transfer of the Acquired Assets to the Buyer under the Successful Bidder APA will be a legal, valid and effective transfer of all of the legal, equitable and beneficial right, title and interest of the Debtors in and to the Acquired Assets free and clear of all Interests.

**Assumption and Assignment of the Assumed Contracts and Assumed Leases**

EE.     The assumption and assignment of the Assumed Contracts and Assumed Leases pursuant to the terms of this Order is integral to the Successful Bidder APA and is in the best interests of the Debtors and their estates, creditors, and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment of the Debtors.  The Assumed Contracts and Assumed Leases are and shall be deemed included in the Acquired Assets for all purposes under this Order.  A list of such Assumed Contracts and Assumed Leases to be assumed and assigned, subject to paragraphs 32 and 35 of this Order, along with the Cure Costs, if any, is set forth on **Exhibit B**.

FF.     Pursuant to the terms of the Successful Bidder APA, the Buyer will or has: (i) pay (paid) any amounts due and payable under any of the Assumed Contracts and Assumed Leases in the ordinary course of business and pursuant to the terms of such Assumed Contracts and Assumed Leases; (ii) cure(d) and/or provide(d) adequate assurance of cure of monetary default (if any) existing prior to the Closing Date under any of the Assumed Contracts and Assumed Leases, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; (iii) provide(d) compensation or adequate assurance of compensation to any party for actual loss (if any) to such party resulting from any default prior to the Closing Date under any of the Assumed Contracts and Assumed Leases, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code; and (iv) provide(d)

- 15 -

adequate assurance of its future performance under the relevant Assumed Contracts and Assumed Leases within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

GG.    The Debtors may assume the Assumed Contracts and Assumed Leases, as identified on Exhibit B to this Order, and transfer and assign each of them to the Buyer pursuant to sections 363 and 365 of the Bankruptcy Code, free and clear of all Interests, and notwithstanding any anti-assignment clause, as provided in section 365(f) of the Bankruptcy Code.  The assumption and assignment of the Assumed Contracts and Assumed Leases pursuant to the terms of this Order is integral to the Sale and is in the best interests of the Debtors, their estates, their creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

HH.    Except as otherwise expressly stated in this Order, the respective Cure Costs set forth on Exhibit B hereto are the sole amounts, if any, necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all defaults and pay all actual losses under the Assumed Contracts and Assumed Leases as of the date of this Order, which amounts shall be updated as of the Closing.

## Compelling Circumstances for an Immediate Sale

II.    To maximize the value of the Acquired Assets, preserve the viability of the Business, and avoid deterioration, erosion of value, and/or uncertainty with respect to the future operation of the Acquired Assets, as well as to comply with the milestones set forth in the Final DIP Order, the Sale of the Acquired Assets must occur as soon as possible. Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

- 16 -

JJ.      The Debtors have demonstrated compelling circumstances and good, sufficient, and sound business purpose and justification for the approval and consummation of the Sale prior to, and outside of, a chapter 11 plan.  The Sale pursuant to the Successful Bidder APA neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating chapter 11 plan for the Debtors and, therefore, does not constitute a *sub rosa* plan.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

### General Provisions

1.      The relief requested in the Motion is granted and approved, and the Sale contemplated thereby is approved as set forth in this Order.

2.      This Court's findings of fact and conclusions of law, set forth in the Bidding Procedures Order, are incorporated herein by reference.

3.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled on the merits and denied with prejudice.  All persons and entities given notice of the Motion that failed to timely object thereto, including, without limitation, all non-debtor parties to the Assumed Contracts and Assumed Leases, are deemed to have consented to the relief sought therein, including, but not limited to, the Cure Amounts set forth in each Cure Notice.

### Approval of the Successful Bidder APA

4.      The Successful Bidder APA and all other ancillary documents, including the Transition Service Agreement ("TSA") and all of the terms and conditions thereof, and the Debtors' entry into such documents, are hereby approved in all respects.

5.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale of the Acquired Assets to the Buyer pursuant to and in accordance with the terms and conditions of the

- 17 -

Successful Bidder APA, (b) close the Sale as contemplated in the Successful Bidder APA and this Order, (c) execute and deliver, perform under, consummate, implement and close fully the Successful Bidder APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Successful Bidder APA and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Successful Bidder APA and such other ancillary documents, (d) assume, assign and transfer the designated Assumed Contracts and Assumed Leases set forth on <u>Exhibit B</u> to the Buyer, without further application to or order of this Court and upon the terms and conditions of the Successful Bidder APA, subject, in the case of the Delayed Contracts, to obtaining the Governmental Authorizations, (e) perform any remaining obligations specified in the Successful Bidder APA after the Closing, and (f) otherwise implement and provide the Buyer and the Debtors with the full benefit of the transactions contemplated by the Successful Bidder APA and this Order.

**<u>Approval of the Back-Up Bid</u>**

6.    The Designated Back-Up Bidder is hereby approved as the Back-Up Bidder (as defined in the Bidding Procedures), and the Designated Back-Up Bid is hereby approved and authorized as the Back-Up Bid (as defined in the Bidding Procedures), subject to the terms and conditions in the Stalking Horse APA.  As set forth in Section VI of the Bidding Procedures, the Debtors will be authorized, but not required, to consummate all transactions contemplated by and consistent with the Designated Back-Up Bid of the Designated Back-Up Bidder without further order of the Court but upon one-business-day advanced notice, which notice will be filed with the Court.

## Transfer of the Acquired Assets

7.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Acquired Assets on the Closing Date.  Such Acquired Assets shall be transferred to the Buyer upon and as of the Closing, and such transfer shall constitute a legal, valid, binding and effective transfer of the Acquired Assets which shall vest the Buyer with all right, title and interest of the Debtors in and to the Acquired Assets free and clear of all Interests, except Assumed Liabilities and Permitted Encumbrances.  Upon the Closing, the Buyer shall take title to and possession of the Acquired Assets, subject only to the Assumed Liabilities and Permitted Encumbrances.

8.      All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Acquired Assets to the Buyer in accordance with the terms of the Successful Bidder APA and this Order.

9.      All persons and entities that are in possession of some or all of the Acquired Assets on the Closing Date are directed to surrender possession of such Acquired Assets to the Buyer or Buyer's designee at the Closing.

10.     Upon Closing, this Order shall be construed as, and shall constitute for any and all purposes, a full and complete general assignment, conveyance and transfer of the Acquired Assets pursuant to the terms of the Successful Bidder APA.

11.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of the obligations, interests, Claims, Liabilities, and Encumbrances of record.

12.     If any person or entity that has filed statements or other documents or agreements evidencing Interests with regard to all or any portion of the Acquired Assets shall not have

- 19 -

delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary or desirable to the Buyer for the purpose of documenting the release of all Interests, which the person or entity has or may assert with respect to all or any portion of the Acquired Assets, the Debtors are hereby authorized, empowered and directed, and the Buyer is hereby authorized and empowered, to execute and file such statements, instruments, releases and other documents on behalf of and in the name of such person or entity, as attorney-in-fact, with respect to the Acquired Assets.

13.    This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Successful Bidder APA.  All entities are authorized and specifically directed to strike all recorded Interests against the Acquired Assets from their records, official or otherwise.

14.    A certified copy of this Order may be filed with any appropriate clerk and/or recorded with any appropriate recorder to act to cancel any of the Interests of record in the Acquired Assets and/or to resolve any title issues with respect to the Acquired Assets.

EAST\190604699.2

15.     Upon Closing, the Buyer (and its successors, assigns, agents or representatives) shall not be deemed to be (a) a successor to the Debtors, (b) de facto merged with the Debtors, or (c) a mere continuation of the Debtors.  Without limiting the generality of the foregoing, and except as specifically provided in the Successful Bidder APA, the Buyer (and its successors, assigns, agents or representatives) shall not be liable for any claims against the Debtors or its predecessors or affiliates or assets, other than as expressly provided for in the Successful Bidder APA or in this Order.

16.     For the avoidance of doubt, the DIP Liens securing the DIP Obligations under the DIP Loan Documents (and, subject to the Roll-Up, the Prepetition Liens securing the Prepetition Secured Obligations under the Prepetition Loan Documents) (as these terms are defined in the Final DIP Order) shall attach to the proceeds from the Sale in the same order of priority and with the same validity, force and effect, and subject to the same carve-outs, as set forth in the Final DIP Order.

**Assumed Contracts and Assumed Leases**

17.     Upon the Closing of the Sale, in accordance with sections 105(a) and 365 of the Bankruptcy Code, the Debtors are authorized and directed to assume and assign each of the Assumed Contracts and Assumed Leases set forth on Exhibit B to the Buyer free and clear of all Interests, and to execute and deliver to Buyer such documents or instruments as may be reasonably necessary to assign and transfer such Assumed Contracts and Assumed Leases to Buyer, as provided in the Successful Bidder APA, and such Assumed Contracts and Assumed Leases shall be deemed assumed and assigned to Buyer as of the Closing Date; *provided, however*, that the Delayed Contracts shall not constitute Assumed Contracts under this Order and/or the Successful Bidder APA until the Debtors obtain the applicable Governmental Authorization related to such Contracts, and Buyer shall have no obligation to pay Cure Costs associate with such Delayed

Contracts until the Debtors obtain the applicable Governmental Authorization related to such Contracts, as further set forth in Section 2.5(e) of the Successful Bidder APA.  For the avoidance of doubt, all Assumed Insurance Policies shall be deemed to be and treated as executory contracts and shall be assumed by the Debtors and assigned to and vest in Buyer at Closing, shall continue in full force and effect thereafter in accordance with their respective terms and shall, along with the proceeds thereunder, be considered the "Acquired Assets"; further for the avoidance of doubt, any change of control, anti-assignment, and assumption of liability provisions in any of the Assumed Insurance Policies and effects thereof shall be fully, unconditionally and irrevocably waived with respect to both the assumption and assignment of such Assumed Insurance Policies effectuated by and through the Successful Bidder APA and this Order, and the assumption or transfer of any liabilities in or as a result of same.

18.     The payment of the applicable Cure Costs (if any), whether as a result of a determination of the Cure Cost by the Court, as a result of the fact that no objection was timely filed to the applicable Cure Notice, or as a result of an agreement between Buyer and the Contract Counterparty, shall, pursuant to section 365 of the Bankruptcy Code and any other applicable law, (a) effect a cure of all defaults existing thereunder as of the Closing Date, (b) compensate for any actual loss to such non-Debtor party resulting from such default, and (c) together with the assumption of the Assumed Contracts and Assumed Leases by the Buyer, constitute adequate assurance of future performance thereof.  The Buyer shall then have assumed the Assumed Contracts and Assumed Leases and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors of such Assumed Contracts and Assumed Leases shall not be a default thereunder.  Except as otherwise agreed to in writing by the Debtors or the Buyer (as applicable), after the payment of the relevant Cure Costs (if any) by the Buyer, neither the Debtors nor the

Buyer shall have any further liabilities to the Contract Counterparties other than the Buyer's obligations under the Assumed Contracts and Assumed Leases that accrue and become due and payable on or after the Closing Date.  For the avoidance of doubt, unless otherwise expressly stated in this Order, the Cure Costs shall be paid in the ordinary course of business and in accordance with the terms of the applicable Assumed Contracts and Assumed Leases whether accruing and/or becoming due and payable prior to or after the effective date of the assumption and assignment.

19.    Subject to Section 2.5(e) of the Successful Bidder APA, any provision in any Assumed Contract that restricts, prohibits or conditions the assignment of such Assumed Contract or allows the party to such Assumed Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assumed Contract, constitutes an unenforceable anti-assignment provision that is void and of no force and effect; for the avoidance of doubt, any change of control provisions in any of the Assumed Contracts and Assumed Leases shall be fully, unconditionally and irrevocably waived with respect to the Sale effectuated by and through the Successful Bidder APA and this Order.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assumed Contracts and Assumed Leases set forth on Exhibit B have been satisfied.  Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assumed Contracts and Assumed Leases set forth on Exhibit B.

20.    Upon the Closing and the payment of the relevant Cure Costs (if any), the Buyer shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Contract and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any

- 23 -

further liability under the Assumed Contracts and Assumed Leases. All counterparties to the Assumed Contracts and Assumed Leases shall cooperate and expeditiously execute and deliver, upon reasonable request of the Buyer, any instruments, applications, consents, or other documents which may be required  or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale.

21.    Upon the payment of the applicable Cure Costs (if any), the Assumed Contracts and Assumed Leases will remain in full force and effect, and no default shall exist under the Assumed Contracts and Assumed Leases nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

22.    There shall be no rent accelerations, assignment fees, increases (including advertising rates) or any other fees charged to the Buyer or the Debtors as a result of the assumption and assignment of the Assumed Contracts and Assumed Leases.

23.    Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all Contract Counterparties are forever barred and permanently enjoined from raising or asserting against the Buyer any assignment fee, default, breach or claim or loss, or condition to assignment, arising under or related to the Assumed Contracts and Assumed Leases existing as of the Closing Date or arising by reason of the Closing.  The failure of the Debtors or Buyer to enforce at any time one or more terms or conditions of any Assumed Contract or Assume Lease shall not be a waiver of such terms or conditions, or of the Debtors' and Buyer's rights to enforce every term and condition of the Assumed Contracts and Assumed Leases.

24.    <u>The Jackson Laboratory</u>.  Notwithstanding anything to the contrary in the Cure Notice or this Order, upon the assumption and assignment of a Design Agreement hereunder, the Buyer shall be deemed to have assumed all rights, benefits, and liabilities under such Design

- 24 -

Agreement, regardless of the date of accrual thereof, including without limitation any contingent or unliquidated liabilities such as indemnification obligations. The parties' respective rights, obligations, claims and defenses under such Design Agreements as assigned to the Buyer (including with respect to any insurance requirements and insurance coverage provided for thereunder) shall be fully preserved. No substantive or procedural right, duty or obligation of the Debtors or non-debtor counterparty The Jackson Laboratory under any Design Agreement will change as a result of such assumption and assignment of such Design Agreement.  This Paragraph 24 shall not be construed to impart liability beyond the terms of any such Design Agreements, nor construed as an admission of liability regarding matters in which Debtors are disputing or may dispute liability.  All contracts and related documentation for the Debtors' improvement and expansion of existing shell space at 21 Kingsland Crossing, Ellsworth, Maine 04605, on behalf of The Jackson Laboratory shall be and hereby are deemed "Design Agreements."

25.     Pernix Group, Inc.  Notwithstanding anything to the contrary in the Cure Notice or this Order, upon the assumption and assignment of a Design-Build Agreement hereunder, the Buyer shall be deemed to have assumed all rights, benefits, and liabilities under such Design-Build Agreement, regardless of the date of accrual thereof, including without limitation any contingent or unliquidated liabilities such as indemnification obligations. The parties' respective rights, obligations, claims and defenses under such Design-Build Agreements as assigned to the Buyer (including with respect to any insurance requirements and insurance coverage provided for thereunder) shall be fully preserved. No substantive or procedural right, duty or obligation of the Debtors or non-debtor counterparty Pernix Group, Inc. under any Design-Build Agreement will change as a result of such assumption and assignment of such Design-Build Agreement.  This Paragraph 25 shall not be construed to impart liability beyond the terms of any such Design-Build

Agreements, nor construed as an admission of liability regarding matters in which Debtors are disputing or may dispute liability. "Design-Build Agreement" refers to contracts (and related documentation) pursuant to which the Debtors provide architectural services to Pernix Group, Inc. in connection with the construction projects for the U.S. Department of State (Overseas Buildings Operations), specifically the Office Annex in Kampala, Uganda, and the U.S. Consulate Compound in Lagos, Nigeria.

26.    Orlando Health.  Notwithstanding anything to the contrary contained in this Order, the Successful Bidder APA, or the *Notice to Counterparties of Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and Cure Costs* directed to Orlando Health, Inc. ("Orlando Health") (the "OH Cure Notice"), the Debtors, Buyer, and Orlando Health agree (a) that certain AIA Document B101 Standard Form Agreement Between Orlando Health, as Owner, and non-debtor subsidiary EYP/AE Incorporated ("EYP/AE"), as Architect, dated October 23, 2019, as replaced and superseded by those certain AIA Document B101 Standard Form Agreements between Orlando Health, as  Owner, and EYP/AE, as Architect, dated August 11, 2020 (as such may have been or may be amended or supplemented from time to time) (the "OH Contracts") shall not be Assumed Contracts for purposes of this Order and the Successful Bidder APA; and (b) that notwithstanding entry of this Order and a closing of the Sale, the parties' respective rights, obligations, claims and defenses under the OH Contracts (including with respect to any insurance requirements and insurance coverage provided for thereunder) shall be fully preserved and intact, irrespective of whether deemed to arise or accrue prior to, from, or after the Closing Date and irrespective of whether known or unknown as of the Closing Date.  For the avoidance of doubt and without limitation, following entry of this Order and any closing of the Sale, Orlando Health shall be entitled to assert any of its rights and claims under the OH Contracts

against EYP/AE, subject to any defenses of EYP/AE, irrespective of when such rights and claims are deemed to arise or accrue.

27.     <u>UCHealth</u>. Notwithstanding Findings U, Y, DD, GG of this Order, any errors and omissions claims of Yampa Valley Medical Center, UCH-MHS, Poudre Valley Healthcare, Inc., University of Colorado Hospital Authority, and University of Colorado Health (collectively, the "<u>UCHealth Entities</u>") against the Debtors relating to any client projects, including but not limited to any rights or remedies of such UCHealth Entities under any contracts executed by such UCHealth Entities with any of the Debtors, are expressly reserved.  Notwithstanding the Debtors' inclusion and designation of only Projects in <u>Exhibit B</u> attached to this Order, for the avoidance of doubt, all contracts, agreements, service package addenda, PSSAs and design change orders executed from time to time by any of the Debtors with Yampa Valley Medical Center, UCH-MHS, Poudre Valley Healthcare, Inc., University of Colorado Hospital Authority, and University of Colorado Health, including, without limitation, any contracts, agreements, service package addenda, PSSAs and/or design charge orders relating to such Projects, are assumed and assigned pursuant to this Order.

28.     <u>Mason Innovation Partners LLC; Clark Construction Group, LLC</u>.  Mason Innovation Partners LLC ("<u>MIP</u>") and the Debtor EYP Architecture & Engineering, P.C. ("<u>EYP Architecture</u>") are parties to that certain Agreement dated May 7, 2021 (the "<u>MIP Prime Agreement</u>") and related consultant agreements (together with the MIP Prime Agreement, and in each case as the same may have been amended from time to time, the "<u>MIP Contracts</u>").  Clark Construction Group, LLC and the Debtor EYP Architecture are parties to that certain Agreement dated May 3, 2018 (the "<u>Clark Prime Agreement</u>") and related consultant agreements (together with the Clark Prime Agreement, and in each case as the same may have been amended from time

to time, the "Clark Contracts").   The MIP Contracts and the Clark Contracts are Assumed Contracts.  Notwithstanding the entry of this Order and a closing of the Sale, the parties' respective rights, obligations, claims and defenses under the MIP Contracts and the Clark Contracts (including with respect to any insurance requirements and insurance coverage provided for thereunder) shall be fully preserved, irrespective of whether deemed to arise or accrue prior to, from, or after the Closing Date and irrespective of whether known or unknown as of the Closing Date.  For the avoidance of doubt, and notwithstanding any other provision in this Order, nothing in this Order shall expand or limit the rights and obligations of the parties to the MIP Contracts or the Clark Contracts, including with respect to any party's right, title, or interest in the Design Materials (as defined in the MIP Contracts and the Clark Contracts), and in the event of any conflict or inconsistency between or among the terms or provisions of this Order or any of the MIP Contracts or the Clark Contracts, the terms and provisions of the MIP Contracts or the Clark Contracts, as applicable, shall govern.

29.   Grunley.  Notwithstanding anything to the contrary in Exhibit B attached hereto or this Order, the Debtors and Buyer agree and stipulate that: (i) the Debtors are assuming all of the Debtors' executory contracts with Grunley Construction Co., Inc. ("Grunley") as of the Closing Date (the "Grunley Contracts") and assigning all Grunley Contracts to the Buyer; (ii) pursuant to 11 U.S.C. 365, upon the occurrence of the Closing, the Buyer shall be deemed to have assumed all rights, benefits, and liabilities under the Grunley Contracts, regardless of the date of accrual thereof, including without limitation any contingent or unliquidated liabilities such as indemnification obligations; (iii) notwithstanding the entry of this Order and the Closing, the parties' respective rights, obligations, claims and defenses under the Grunley Contracts assigned to the Buyer (including with respect to any insurance requirements and insurance coverage

provided for thereunder) shall be fully preserved; and (iv) Grunley shall reserve all rights of setoff and recoupment against the Buyer but only to the extent allowable under the Grunley Contracts and in accordance with applicable law regardless of the date of accrual of any such rights or claims, including without limitation all indemnification claims, to the extent allowable under the Grunley Contracts.

30.    Spectrum Engineers Inc. In connection with the assumption and assignment of that certain Standard Form of Agreement Between Architect and Consultant [AIA Document C401 – 2017] entered into on or about April 16, 2019, by and between the Debtor EYP, Inc., as Architect, and Spectrum Engineers Inc. ("Spectrum"), as Consultant, (the "Spectrum Consulting Agreement") regarding the design and construction of a children's hospital in the State of Utah, identified as the Intermountain Healthcare, Primary Children's Hospital, Lehi Campus (the "Intermountain Project"), Buyer shall be obligated to pay, when they become due and payable in the ordinary course of business and in accordance with the terms of the Spectrum Consulting Agreement, any unpaid invoices issued by Spectrum Engineers prior to or after the Closing (including invoice # 87087).  For the avoidance of doubt, nothing in this Order shall affect or impair any lien Spectrum might have against the Intermountain Project that is not property of the Debtors' estates.

31.    Bard, Rao + Athanas Consulting Engineers, LLC.  With respect to the assumption and assignment of the subconsultant agreements ("BR+A Assumed Contracts") with subconsultant Bard, Rao + Athanas Consulting Engineers, LLC ("BR+A"), the Cure Costs to be paid, in aggregate, on the Closing Date of the Sale or at such other time that constitutes the ordinary course of business and in accordance with the terms of the subconsultant agreements with BR+A, or as soon thereafter as practicable, is $3,014.20, consisting of (a) invoice number 1073395 ($250.00)

- 29 -

and (b) invoice number 1074705 ($2,764.20).  This amount will be reduced by the amount of any payments received by BR+A on such invoices prior to the Closing Date of the Sale.  In addition, the Buyer or the Debtors (as applicable) will pay in the ordinary course of business and in accordance with the terms of the consulting agreement with BR+A any invoices sent to the Debtors by BR+A in the ordinary course of business after April 24, 2022, except such invoices for which BR+A has received payment as of the date of the Order or the Closing of the Sale.  The amounts set forth in this Paragraph 31, are the sole amounts necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all defaults and pay all actual pecuniary losses resulting from defaults under the BR+A Assumed Contracts.

32.    <u>United States Federal Government</u>.  Notwithstanding any provision to the contrary in the Motion, this Order, and any implementing sale documents, nothing shall: (1) authorize the assumption, sale, assignment or other transfer to the Buyer of any federal (i) grants, (ii) grant funds, (iii) contracts,  (iv) property, including but not limited to, intellectual property and patents, (v) leases, (vi) agreements or other interests of the federal government (collectively, "<u>Federal Interests</u>") without compliance by the Debtors and the Buyer with all terms of the Federal Interests and with all applicable non-bankruptcy law; (2) be interpreted to set cure amounts or to require the government to novate, approve or otherwise consent to the assumption, sale, assignment or other transfer of any Federal Interests; (3) waive, alter or otherwise limit the United States' property rights, including but not limited to, inventory, patents, intellectual property, licenses, and data; (4) affect the setoff or recoupment rights of a federal governmental unit (as defined in 11 U.S.C. § 101(27)); (5) authorize the assumption, transfer, sale or assignment of any federal governmental unit's (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal

requirements, obligations and approvals under non-bankruptcy laws; (6) release, nullify, preclude or enjoin the enforcement of any police or regulatory liability to a federal governmental unit that any entity would be subject to as the owner or operator of property after the date of entry of this Order; (7) confer exclusive jurisdiction to the Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code); or (8) expand the scope of 11 U.S.C.§ 525.

33.     <u>Dallas County; Harris County</u>.  The ad valorem taxes owed to Dallas County and Harris County for tax year 2022 pertaining to the Acquired Assets shall be paid to Dallas County and Harris County by the Buyer and the 2022 ad valorem tax liens shall be retained against the Assets until said taxes, including any penalties and interest that may accrue, are paid in full. Nothing in this Paragraph 33 shall alter any rights of Buyer under the Successful Bidder APA with respect to any adjustment to the purchase price or closing cash payment based on assumption of the foregoing ad valorem tax liability for any period prior to the Closing Date.  Any proration to the Debtors shall be credited to the Buyer at closing or on terms agreed upon by the Debtors and Buyer.  Any dispute regarding the proration of the ad valorem taxes between the Debtors and Buyer shall have no effect on Buyer's responsibility to pay the 2022 ad valorem taxes.

## Other Provisions

34.     Effective upon the Closing Date, all persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Buyer and its successors and assigns with respect to any (a) Interests in connection with the Debtors or the Acquired Assets (other than Assumed Liabilities), or (b) successor liability, including commencing or continuing in any manner any action or other proceeding against the Buyer, its successors or assigns, assets or properties (including the Acquired Assets).The Buyer

- 31 -

shall have no liability with respect to Excluded Liabilities, and no successor or vicarious liability of any kind or character, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, or in any way related to the operation of the Business or any of the Acquired Assets prior to the Closing Date, except as provided in the Successful Bidder APA. The Buyer has given substantial consideration under the Successful Bidder APA for the benefit of the holders of any Interests. The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential claims of successor or vicarious liability of the Buyer, which releases shall be deemed to have been given in favor of the Buyer by all holders of Interests against or in the Debtors or any of the Acquired Assets.

35.     To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and any other governmental authorization or approval of the Debtors with respect to the Acquired Assets and the Contracts, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are transferred to the Buyer as of the Closing Date. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license related to the operation of the Acquired Assets sold, transferred or conveyed to the Buyer on account of the filing or pendency of the Chapter 11 Cases. For the avoidance of doubt, nothing in this Order or the Successful Bidder APA authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.

36.     Because the Court has found that the transactions contemplated by the Successful Bidder APA are undertaken by the Buyer without collusion and in good faith, as that term is contemplated by section 363(m) of the Bankruptcy Code, and that the consideration provided by the Buyer for the Acquired Assets is fair and reasonable, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assumed Contracts and Assumed Leases), unless such authorization and such Sale are duly stayed pending such appeal.  The Buyer is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to and is hereby granted the full protections of section 363(m) of the Bankruptcy Code.

37.     The consideration provided by Buyer for the Acquired Assets under the Successful Bidder APA is fair and reasonable under the circumstances, and neither the Debtors nor Buyer have engaged in any action or inaction that would cause or permit the Sale to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.

38.     Notwithstanding the potential applicability of Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Order shall be effective immediately upon entry and the Debtors and the Buyer are authorized to close the Sale, and take any action authorized by this Order, immediately upon entry of this Order.

39.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

40.     The failure specifically to include or reference any particular provision of the Successful Bidder APA or the TSA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Successful Bidder APA and the TSA be authorized and approved in their entireties.

- 33 -

41.     The Successful Bidder APA, the TSA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

42.     Buyer shall have no obligation to proceed with Closing unless and until all conditions precedent to its obligations to do so, as set forth in the Successful Bidder APA, have been met, satisfied, or waived in accordance with the terms of the Successful Bidder APA.

43.     The provisions of this Order and the Successful Bidder APA, and any actions taken pursuant hereto or thereto, including under the TSA, shall survive entry of any order (a) confirming or consummating any plan of reorganization or liquidation of the Debtors, (b) converting the Debtors' cases from chapter 11 to chapter 7, (c) dismissing the Chapter 11 Cases, or (d) appointing a chapter 11 trustee or examiner, and the terms and provisions of the Successful Bidder APA as well as the rights and interests granted pursuant to this Order and the Successful Bidder APA shall continue in this or any superseding case and shall be binding upon the Debtors, their affiliates, estates, and creditors, all holders of equity interests in the Debtors, all holders of any Interests, all Contract Counterparties, all parties in interest in the Chapter 11 Cases, any trustees or estate fiduciaries subsequently appointed in the Chapter 11 Cases or upon a conversion to chapter 7 of the Bankruptcy Code, the Buyer, and thee respective successors and assigns of each of the foregoing.  Nothing contained in any order entered in the Chapter 11 Cases or any related proceeding subsequent to entry of this Order, nor in any chapter 11 plan confirmed in this case, shall conflict with or derogate from the provisions of the Successful Bidder APA or the terms of this Order.

- 34 -

44.     The provisions of this Order are non-severable and mutually dependent.

45.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

46.     To the extent that this Order is inconsistent with the Successful Bidder APA or any related documents or any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Order shall govern.

47.     Within ten (10) Business Days following the Closing, the caption in these Chapter 11 Cases shall be changed.

48.     The Court shall retain exclusive jurisdiction over all matters arising from or related to the interpretation and implementation of this Order, and to interpret, implement and enforce the terms and provisions of the Successful Bidder APA, the TSA, all agreements executed in connection with the Successful Bidder APA to which the Debtors are a party or which have been assigned by the Debtors to Buyer, and to adjudicate any and all disputes concerning or relating in any way to the Successful Bidder APA, the Sale, or this Order, including to compel delivery of the Acquired Assets, to protect Buyer and its assets, including the Acquired Assets, against any Interests and successor and transferee liability, and to enter orders, as appropriate, pursuant to sections 105, 363, 365, or other applicable provisions of the Bankruptcy Code to transfer the Acquired Assets and Assumed Contracts to Buyer.

**Dated: June 22nd, 2022**
**Wilmington, Delaware**

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**

EAST\190604699.2